NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

KAYOMA S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.M., A.M., E.M., G.M., *Appellees*.

No. 1 CA-JV 16-0369
FILED 3-7-2017

---

Appeal from the Superior Court in Maricopa County
No. JD23610
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

---

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Paul J. McMurdie joined.

J O N E S, Judge:

¶1        Kayoma S. (Mother) appeals the juvenile court's order terminating her parental rights to A.M., A.A.M., E.M., and G.M. (the Children).  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

¶2        In April 2013, two-month-old E.M. was hospitalized for seizures resulting from head trauma.  The hospital suspected the injury was non-accidental and contacted the police.  The subsequent investigation indicated the Children's father (Father) may have injured E.M. through "rough play" while Mother was working.

¶3        Thereafter, the Department of Child Safety (DCS)[2] assumed temporary custody of four-year-old A.M., one-year-old A.A.M., and E.M., and filed a petition alleging they were dependent as to Mother due to abuse

---

[1]        We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights.  *Marianne N. v. Dep't of Child Safety*, 240 Ariz. 470, 471 n.1, ¶ 1 (App. 2016) (citing *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010)).

[2]        At the time, employees of Child Protective Services (CPS), formerly a division of the Arizona Department of Economic Security (ADES), acted on behalf of the state.  Effective May 29, 2014, however, the Arizona legislature repealed the statutory authorization for CPS and for ADES's administration of child welfare and placement services under title 8, and transferred the powers, duties, and purposes previously assigned to those entities to the newly established DCS. *See Melissa W. v. Dep't of Child Safety*, 238 Ariz. 115, 116 n.1, ¶ 2 (App. 2015) (citing 2014 Ariz. Sess. Laws, ch. 1, §§ 6, 20, 54 (2nd Spec. Sess.)).  For simplicity, references to DCS in this decision encompass both ADES and the former CPS.

and neglect.[3]  Mother denied the allegations in the petition, but, following a hearing, the juvenile court found all three children dependent and set a case plan of family reunification concurrent with severance and adoption. The court ordered Mother be provided parent aide services, counseling, and supervised visitation.

¶4            In July 2014, the Foster Care Review Board (FCRB) determined that Mother had completed parenting classes and her other services, but expressed concern with the unexplained cause of E.M.'s non-accidental injuries.  DCS then moved to return A.M. and A.A.M. to Mother's physical custody, and the juvenile court entered an order to that effect. Mother, however, failed to remain in communication with DCS, and the court ordered A.M and A.A.M. be returned to DCS custody.

¶5            In January 2015, the FCRB recommended the case plan be changed to severance and adoption in response to Mother's lack of communication with DCS and inability to secure adequate housing, as well as a report from E.M.'s foster parents that he returned from an overnight stay with Mother and Father with bruising.  Mother gave birth to G.M. soon thereafter, and DCS filed a petition alleging G.M. was dependent as to Mother on the grounds of abuse or neglect.  Specifically, DCS alleged Mother failed to protect E.M. from abuse and neglected to provide a stable home environment.  In February 2015, the juvenile court placed G.M. in DCS custody pending the dependency hearing.  The court eventually ordered G.M. dependent as to Mother but retained the case plan of family reunification concurrent with severance and adoption.

¶6            In August 2015, DCS again moved to have A.M. and A.A.M. placed in Mother's physical custody, believing Mother had found a more stable living environment with her aunt.  The juvenile court granted DCS's request.   However, Mother had a dispute with her aunt regarding household finances and maintenance and moved out, leaving the girls behind.  The court then ordered A.M. and A.A.M. be placed in kinship foster care with their maternal grandmother.

¶7            In December 2015, DCS moved to terminate Mother's parental rights to the Children, alleging severance was warranted because: (1) Mother failed to protect E.M. from abuse, and (2) Mother failed to

_____

[3]        DCS also alleged the Children were dependent as to Father.  His parental rights were eventually terminated.  He did not contest the termination of his parental rights and is not a party to this appeal.

remedy the circumstances causing the Children to be in an out-of-home placement for a cumulative period of fifteen months or longer.[4]  *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(2),[5] (8)(c).  Mother contested the allegations in the petition, and the juvenile court set a severance hearing for August 2016.

**¶8**        At the hearing, Mother's first DCS case manager testified she had worked with Mother for about two years, ending in February 2016.  Although Mother completed many of the services provided by DCS, the case manager indicated that Mother's inconsistent communication with DCS and unstable housing exhibited an unwillingness and inability to parent the Children and had caused A.M. and A.A.M. to return to DCS custody twice.  Mother's second DCS case manager testified he was only able to contact Mother once during a six-month period.  Mother testified she refused to help her aunt with the household finances while she was living there even though DCS had informed her that her daughters would not be removed if she did so.

**¶9**        Because the Children are defined as Indian children under the Indian Child Welfare Act (ICWA), *see* 25 U.S.C. § 1903(4), a Navajo social worker testified as an expert under ICWA.  She testified that, despite DCS making "active efforts to provide remedial services and rehabilitative programs, . . . continued custody of the [C]hildren by Mother would likely result in serious emotional or physical damage."  The social worker stated that Mother "did the services, but [she] did not make the behavioral changes," and Mother was not creating permanency and stability for the Children, instead allowing "them to linger on in [DCS] custody."

**¶10**        The juvenile court took the matter under advisement.  In considering the Navajo social worker's testimony, the court found DCS made active efforts to provide remedial services and rehabilitative programs for Mother, but those efforts were unsuccessful.  The court further found Mother failed to protect E.M. from abuse, *see* A.R.S. § 8-533(B)(2), and failed to remedy the circumstances causing the Children to

---

[4]        Although the termination motion did not specifically reference G.M. under the fifteen-month out-of-home ground for severance, by the time the severance hearing occurred, G.M. had been in an out-of-home placement for eighteen months.  The juvenile court included G.M. in its order terminating Mother's parental rights on this ground, and Mother does not suggest it acted inappropriately in doing so.  *See infra* ¶ 10.

[5]        Absent material changes from the relevant date, we cite a statute's current version.

be in an out-of-home placement for a cumulative period of fifteen months or longer without proving she would be capable of exercising effective parental care in the near future, *see* A.R.S. § 8-533(B)(8)(c).

**¶11** In particular, the juvenile court explained that Mother did not complete her parent aide referrals or family reunification team service, nor demonstrate the ability to maintain stable housing after failing to avail herself of both housing and family assistance. The court concluded severance would be in the Children's best interests because they had been in foster care for the majority of their young lives, and a family placement was willing to permanently adopt all four Children. The court therefore terminated Mother's parental rights.

**¶12** Mother timely appealed the juvenile court's order. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶13** "The right to custody of one's child[ren] is fundamental, but it is not absolute." *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 213, ¶ 5 (App. 2016) (citing *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000)). The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that DCS "made a diligent effort to provide appropriate reunification services," and:

> [t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer[,] . . . the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

A.R.S. § 8-533(B)(8)(c); *see also* A.R.S. § 8-537(B); Ariz. R.P. Juv. Ct. 66(C); *Michael J.*, 196 Ariz. at 249, ¶ 12.[6]

---

[6] DCS must also prove that termination is in a child's best interests by a preponderance of the evidence. *See* Ariz. R.P. Juv. Ct. 66(C); *Michael J.*, 196 Ariz. at 249, ¶ 12. Mother does not contest the juvenile court's finding to this effect. Nevertheless, because the court reasonably found the Children would likely be harmed if left in Mother's custody, *see infra* ¶ 18,

**¶14** We review a termination order for an abuse of discretion. *Jeffrey P.*, 239 Ariz. at 213, ¶ 5 (citing *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004)). The juvenile court, "as the trier of fact in a termination proceeding, 'is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts.'" *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Oscar O.*, 209 Ariz. at 334, ¶ 4). This Court, therefore, does not reweigh the evidence on appeal and will affirm a termination order so long as it is supported by reasonable evidence. *Id.* (citing *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81, ¶ 13 (App. 2005), and *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997)).

**¶15** Mother first contends the juvenile court erred in finding she had failed to remedy the circumstances that caused the Children to be in an out-of-home placement because she completed many of her reunification services and was actively searching for stable housing. The record reflects that although Mother completed many of her reunification services, she failed to complete her parent aide referrals and the family reunification team service. Furthermore, the record portrays Mother's sporadic attempts, over a three-year period, to locate and maintain stable housing. When Mother was specifically told she could retain custody of her Children if she paid $35 per week in rent to her aunt and helped with housework, Mother refused, electing instead to leave the residence and abandon A.M. and A.A.M. Moreover, Mother never explained her failure to keep in contact with DCS, a circumstance that caused her to lose physical custody of A.M. and A.A.M. after they were returned to her care the first time. Reasonable evidence supports the finding that Mother failed to remedy the circumstances that caused the Children to be in an out-of-home placement, and we find no abuse of discretion.

**¶16** Mother next contends DCS failed to prove a substantial likelihood that Mother would be incapable of exercising proper and effective parental care and control in the near future. However, Mother's

___

and they were all adoptable, we believe DCS sufficiently proved severance was in the Children's best interests. *See Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016) (noting severance is in a child's best interests if the "severance affirmatively benefits the children (such as showing they are adoptable or more stable in an existing placement), or eliminates a detriment to the children if the parent-child relationship is not severed") (citing *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6-7 (1990), and *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004)).

failure to maintain stable housing, despite receiving family assistance and information on how to apply for housing assistance, was the primary cause of her inability to exercise proper and effective parental care. At the time of her severance hearing, Mother testified she had been living with her cousin during the preceding week and indicated that living arrangement was only temporary. Mother further revealed she had applied for Section 8 housing several months prior to the hearing but admitted her chances of obtaining Section 8 housing were speculative. On the whole, the record depicts a parent who failed to make necessary behavioral changes, despite having been provided "the time and opportunity to participate in programs designed to improve the parent's ability to care for the [C]hild[ren]." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 37 (App. 1999) (citing *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994)). And through its cross-examination of Mother, DCS met its burden of proving she was unlikely to make the necessary behavioral changes in the near future.

¶17     Mother also argues DCS failed to prove, beyond a reasonable doubt and through the testimony of a qualified expert witness, that her continued custody of the Indian Children would likely result in serious emotional or physical harm to the Children, as required by ICWA. *See* 25 U.S.C. § 1912(f); Ariz. R.P. Juv. Ct. 66(C); *see also Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334, ¶ 11 (2009). Because Mother effectively challenges the sufficiency of the evidence, we again review for an abuse of discretion, and will uphold the juvenile court's findings and order if they are supported by reasonable evidence. *See supra* ¶ 14.

¶18     Here, DCS presented expert testimony from a social worker who was a member of the Children's tribe and had been assigned to Mother's case for over three years. The expert witness specifically testified that, based on her personal knowledge of Mother's history and behavior, Mother's continued custody would result in serious emotional or physical harm to the Children. In particular, she testified that Mother's participation in reunification services was not eliciting the crucial behavioral changes that would ensure the Children were safe in her care, and that Mother's inability to retain physical custody of A.M. and A.A.M., despite DCS's attempts to facilitate reunification, exhibited a pattern of instability that would be detrimental to the Children's well-being. The social worker confirmed the Navajo tribe agreed with DCS's case plan of severance and adoption. Based on this expert testimony, the juvenile court could have found, beyond a reasonable doubt, that continued custody of the Children by Mother was likely to result in serious emotional or physical damage to them. The court complied with ICWA and we find no error.

**¶19** Mother has not proved any irregularity in the juvenile court's order. Accordingly, we find the court did not abuse its discretion in terminating Mother's parental rights to the Children under A.R.S. § 8-533(B)(8)(c).[7]

## CONCLUSION

**¶20** The juvenile court's order terminating Mother's parental rights to the Children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[7] Because we affirm the juvenile court's order terminating Mother's parental rights under the fifteen-month out-of-care ground, we need not address any other statutory ground for severance that the court considered. *See Michael J.*, 196 Ariz. at 249, ¶ 12.