NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JUAN C., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, E.C., N.C., *Appellees.*

No. 1 CA-JV 18-0039
FILED 7-3-2018

Appeal from the Superior Court in Maricopa County
No.  JD38190
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

COUNSEL

Steven Czop, Attorney at Law, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn L. Spritzer
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Jennifer B. Campbell joined.

---

**B E E N E**, Judge:

¶1        Juan C. ("Father") challenges the superior court's order terminating his parental rights to his two sons.  Because reasonable evidence supports termination, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Father and Alicia N. ("Mother")[1] are the biological parents of E.C. (born in March 2014) and N.C. (born in February 2015) (collectively, the "Children").  In August 2015, Father pled guilty to three felonies; two counts of aggravated assault and one count of assisting a criminal street gang.  In early November 2015, he was sentenced to two concurrent terms of five years' imprisonment and placed on probation for two years following his release, with a maximum release date of November 2019.  After Father was incarcerated, Mother became homeless and in mid-2015 sent E.C. and N.C. to live with separate relatives who were granted guardianships by the court.  When Mother tried to terminate the guardianships, the Children's guardian *ad litem* filed private dependency petitions.  The petitions alleged that Mother was unable to parent due to abandonment, neglect, substance abuse, and mental health, and that Father was unable to parent due to incarceration and abandonment.

¶3        The Department of Child Safety ("DCS") substituted in as petitioner and withdrew the allegation of abandonment against Father.  Father denied the allegation but submitted the issue of dependency to the superior court.  The court found the Children dependent on the ground of incarceration.  Because Father was incarcerated, DCS could not offer him reunification services but encouraged him to participate in any services available while in prison.

---

[1]     The superior court also terminated Mother's parental rights to the Children, but she is not a party to this appeal.

¶4            In September 2017, DCS moved to terminate Father's parental rights pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(1) (abandonment) and (4) (length of felony conviction).  After a contested termination hearing in January 2018, the superior court terminated Father's parental rights on the ground of incarceration and found that severance would be in the Children's best interests.  The court found that

> Taking into consideration the 'Michael J.' factors . . . this father's incarceration has and will continue to deprive his children of a normal home for a period of years.  There is no other parent available to parent the children due [to] the mother's own issues . . . . The children are very young and father has not maintained a normal parent-child relationship with them and it is unlikely that a normal parent-child relationship can be established, nurtured and maintained during father's incarceration.

¶5            Father timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶6            The right to parent one's child is fundamental but not absolute.  *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005).  The superior court may terminate parental rights if it finds, "by clear and convincing evidence, at least one of the statutory grounds set out in section 8-533" and by a preponderance of the evidence that termination is in the best interests of the child.[2] *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶ 12 (2000); *Kent K.*, 210 Ariz. at 284, ¶ 24.

¶7            "[W]e view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision," *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009), and we will not reverse unless there is no reasonable evidence to support the order, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).  Because the superior court "is in the best position to weigh the

---

[2]        Father does not challenge the superior court's finding that termination of his parental rights is in the Children's best interests; thus, we do not address it.  *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577-78, ¶ 5 (App. 2017).

evidence, observe the parties, judge the credibility of the witnesses, and make appropriate findings," we will accept its findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶8** Under A.R.S. § 8-533(B)(4), a parent's rights can be terminated when the parent "is deprived of civil liberties due to the conviction of a felony" or the length of the sentence is such "that the child will be deprived of a normal home for a period of years." There is no "bright line" definition of the length of time required to deprive a child of a normal home. *Michael J.*, 196 Ariz. at 251, ¶ 29. Instead, the superior court should consider all relevant factors, including, but not limited to:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id*. at 251-52, ¶ 29. "[T]here is no threshold level under each individual factor in *Michael J.* that either compels, or forbids, severance. It is an individualized, fact-specific inquiry." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007). "The inquiry under § 8-533(B)(4), however, focuses on the child's needs during the incarceration and not solely on whether the parent would be able to continue the parent-child relationship after release." *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 215, ¶ 14 (App. 2016).

**¶9** Father argues that insufficient evidence exists to support the superior court's finding that the length of his prison sentence would deprive the Children of a normal home for a period of years. Specifically, Father argues that the court "should have taken into consideration all of the factors outlined in *Michael J*. . . . [and] cannot ignore that most of the *Michael J.* factors in the record … are in Father's favor." We disagree.

**¶10** As a threshold matter, we note that although the superior court did not list its findings for every factor analyzed, the court explicitly stated that it considered the *Michael J.* factors. Additionally, while the court

is required to consider all *relevant* factors, it is not required to list every finding regarding each factor considered. *See Michael J.*, 196 Ariz. at 251, ¶ 29; *Christy C.*, 214 Ariz. at 451-52, ¶ 19 ("It imposes an undue burden and inappropriate task on a trial judge to list *every* fact upon which his or her findings are based.") (citation omitted). Moreover, Father essentially asks us to reweigh the evidence presented to the superior court, which we will not do on appeal. *See Xavier R. v. Joseph R.*, 230 Ariz. 96, 100, ¶ 12 (App. 2012).

¶11　　　　Nevertheless, reasonable evidence supports termination on the ground of incarceration. First, as to the first three factors (the length and strength of any parent-child relationship existing when incarceration begins, the degree to which the parent-child relationship can be continued and nurtured during the incarceration, and the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home), the superior court found that the children "are very young and father has not maintained a normal parent-child relationship with them and it is unlikely that a normal parent-child relationship can be established, nurtured and maintained during father's incarceration."

¶12　　　　DCS case manager, Joshua Fulkerson, testified that before Father was incarcerated, he had a "standard relationship" with the Children. But once Father was incarcerated and the Children were living with his relatives before coming under DCS care, Father did not maintain contact with the Children, did not send cards, gifts, or letters, and spoke with the Children only when they visited sporadically with Mother. Since the Children have been in DCS care, Father has had weekly telephone calls and in-person visits with the Children as facilitated by their caregivers. Despite more recent contact, however, Fulkerson testified that Father has failed to maintain a normal parent-child relationship with the Children. During his incarceration, Father has failed to provide for any of the Children's needs. He has not provided any financial support or met the Children's physical, social, educational, medical, psychological, or emotional needs.

¶13　　　　As to the next factor, the length of sentence, Father was sentenced in November 2015 to a five-year prison term for two felony convictions with a maximum release date of November 2019. Father asserts that because he could be released early (he provides no date or date range), his prison sentence "is not long enough to believe he could not have a substantial relationship with the children when he was released." However, under A.R.S. § 8-533(B)(4), the standard for termination is not

whether a parent could have a substantial relationship with his child once released; the standard is when the length of the sentence deprives a child "of a normal home for a period of years." The relevant period in determining whether the length of a sentence will deprive a child of a normal home for a period of years is the entire period of incarceration. *See Jesus M.*, 203 Ariz. at 281, ¶ 8 ("We conclude the legislature used the words 'will be deprived' in § 8-533(B)(4) to mean 'will have been deprived' in total, intending to encompass the entire period of the parent's incarceration and absence from the home.").

¶14 Here, the superior court found Father's incarceration had and would continue to deprive the Children of a normal home for a period of years. Father had been in custody awaiting sentencing, and therefore absent from the home, since approximately August 2015; when E.C. was one and a half years old and N.C. was six months old. The dependency petitions were filed in late 2016, approximately one year later. At the time of the termination hearing in January 2018, E.C. was less than four years old and N.C. was less than three years old. If Father is released in November 2019 (maximum sentence), E.C. will be almost six years old and N.C. will be over four and a half years old. As such, the Children will have been deprived of a normal home due to Father's incarceration for more than four years, the vast majority of their young lives. This is also true as to the last contested factor, the effect of the deprivation of a parental presence on the child. Because Mother was also absent from the home and the Children lived with relatives, the record shows that the Children's understanding of Father's parental presence currently is that of an incarcerated individual who has no ability to provide a normal home for them.

¶15 Regarding the next factor, the availability of another parent to provide a normal home life, the court found that no other parent is available due to Mother's own issues. It is undisputed that Mother's parental rights to the Children were also terminated. Thus, no other parent is available to provide a normal home life.

¶16 We find that, based upon our review of the record, reasonable evidence supports the court's termination of Father's parental rights because Father's incarceration will deprive the Children of a normal home for a period of years and therefore affirm. *See Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

## CONCLUSION

¶17 For the foregoing reasons, we affirm termination of Father's parental rights to the Children.



AMY M. WOOD • Clerk of the Court
FILED: AA