IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JEFFREY P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.P., *Appellees.*

No. 1 CA-JV 15-0031
FILED 3-1-2016

Appeal from the Superior Court in Navajo County
No. S0900JD201300017
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

Riggs Ellsworth & Porter, PLC, Show Low
By Michael R. Ellsworth
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric K. Knobloch
*Counsel for Appellee DCS*

**OPINION**

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Kent E. Cattani and Judge John C. Gemmill joined.

**J O H N S E N**, Judge:

**¶1**         We reaffirm in this case the principle that in considering whether to terminate a parent's rights due to incarceration, the superior court may but need not presume the parent will be released from prison before completing his or her full term.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**         Jeffrey P. ("Father") is the parent of a child ("Child") born in 2013.  Child was born substance-exposed because of methamphetamine use by her mother.  Within a month after Child's birth, the Department of Child Safety ("DCS") filed a dependency petition alleging her parents failed to participate in services and remain substance-free.[1]  Father stipulated to the dependency, acknowledging his need for services and for help in establishing a safe environment for Child, and the court returned Child to him in September 2013.

**¶3**         In November 2013, Father was arrested and charged with second-degree burglary, and DCS removed Child from Father's custody. After Father was sentenced eight months later to a 2.5-year prison term, the court changed the case plan from reunification to severance and adoption. DCS then moved to terminate both parents' parental rights, alleging, *inter alia*, that Father's incarceration would deprive Child of a normal home for a period of years under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(4) (2016).[2]  Following trial on November 13, 2014, the superior court granted the motion to terminate both parents' rights.

**¶4**         Father timely appealed the court's termination order.[3]  We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235(A) (2016), 12-2101(A)(1) (2016) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

---

[1]      Pursuant to S.B. 1001, Section 157, 51st Leg., 2d Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter.  *See* ARCAP 27.

[2]      Absent material revision after the relevant date, we cite a statute's current version.

[3]      Child's mother is not a party to this appeal.

## DISCUSSION

¶5 The right to custody of one's child is fundamental, but it is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). The superior court may terminate a parent-child relationship upon clear and convincing evidence of at least one of the statutory grounds detailed in A.R.S. § 8–533(B). *Id.* at 249, ¶ 12. Additionally, the court must find by a preponderance of the evidence that termination is in the child's best interest. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review a termination order for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶6 As relevant here, § 8-533(B)(4) provides that a parent's rights may be terminated if "the parent is deprived of civil liberties due to the conviction of a felony . . . [and] the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." In *Michael J.*, our supreme court set out a non-exclusive list of factors for courts to consider in determining if a parent's prison sentence will deprive a child of "a normal home for a period of years":

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

196 Ariz. at 251–52, ¶ 29.

¶7 Father argues the superior court erred by failing to consider the possibility he would be released early from prison. He was sentenced to 2.5 years in prison beginning on July 10, 2014, with presentence incarceration credit of 233 days, meaning that his term of incarceration was scheduled to end in May 2016. At trial, Father testified he might qualify for early release, which would allow him to be released on community supervision in October 2015. Contrary to Father's contention, the superior court plainly considered that he might be released before May 2016: Its

order noted that Father's community supervision might begin as early as October 2015.[4]

**¶8**        Father seems to argue the court erred by not finding that his early release was a certainty.  In exercising its broad authority to determine each case on its facts, however, a court addressing the incarceration ground for severance must consider the designated length of the sentence and may consider the possibility of early release.  *See Michael J.*, 196 Ariz. at 251-52, ¶ 29; *cf. Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 441, ¶ 16 (App. 2014) (anticipated early release from incarceration "is a relevant factor" in considering severance based on incarceration); *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 550-51, ¶ 15 (App. 2010) ("As long as the juvenile court considers the length of sentence, we find no error for it to also consider the anticipated release date.").  No authority requires the court to presume an early release.

**¶9**        Father also argues that if he were released in October 2015, he would have been incarcerated for only nine months from the date of the amended court order severing his parental rights.  But the relevant period is the entire period of incarceration, not solely the time after entry of the termination order. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 8 (App. 2002).  ("We conclude the legislature used the words 'will be deprived' in § 8-533(B)(4) to mean 'will have been deprived' in total, intending to encompass the entire period of the parent's incarceration and absence from the home.").

**¶10**        Father further argues that if released early, he would have been incarcerated for fewer than two years, which he argues is too short to amount to a "period of years" for purposes of § 8-533(B)(4).  We need not address that issue, however, because, as stated, the superior court was not required to find Father would be released before the completion of his entire term.  Moreover, as Father acknowledged in oral argument, Child would not necessarily have been returned to him immediately upon his release from prison.  His conditions of release might affect his ability to interact with Child; beyond that, he still needed to complete parenting classes, counseling and other services.  Accordingly, the superior court reasonably could conclude that more than two years would pass before Father could be reunited with Child.

---

[4]        We take judicial notice of the fact that Father was no longer incarcerated at the time of our oral argument on November 10, 2015.  *See* Ariz. R. Evid. 201.

¶11       Relying on *Matthew L.*, Father argues that notwithstanding his incarceration, he has a strong relationship with Child. Like the parent in that case, Father maintained contact with Child by writing letters and sending a birthday card. *See Matthew L.*, 223 Ariz. at 548, ¶ 4. Father also requested visitation with Child, but DCS denied the request because it concluded the travel was not in Child's best interest.

¶12       In *Matthew L*, we affirmed the superior court's denial of a motion to terminate based on incarceration because reasonable evidence supported the court's ruling. 223 Ariz. at 551, ¶ 19. We viewed the evidence in that case in the light most favorable to sustaining the court's ruling and emphasized the discretion vested in the superior court to consider and weigh all relevant factors. Here, the superior court granted DCS's motion to terminate Father's parental rights based on its review of the evidence, and this court will not reweigh the evidence on which that court based its ruling. *See Rocky J.*, 234 Ariz. at 441, ¶ 15 (superior court "reasonably concluded" insufficient evidence presented to support severance when parent had been incarcerated for much of 12-year-old child's life but expected to be released on parole seven months after severance trial).

¶13       Father contends the superior court failed to recognize the relationship he had with Child for the first six months of her life. He testified he saw Child every day during the month after her birth and that she had been in his care for two months before his arrest. In deciding whether to sever a parent's rights due to incarceration, however, the superior court must consider not only the parent-child relationship at the time the incarceration commences but also, how and whether that relationship may be maintained during the incarceration. *See Michael J.*, 196 Ariz. at 251, ¶ 29 (court must consider the "parent-child relationship existing when incarceration begins" and the "degree to which the parent-child relationship can be continued and nurtured during the incarceration"). A DCS supervisor testified it is difficult to nurture a parent-child relationship between a young child and an incarcerated parent:

> In the first few years of development, trust is the primary thing that we work on developing . . . . When a child is not — doesn't have that touch, doesn't learn that a parent is going to

come back and be there, that's where a child doesn't develop, and they develop sort of cognitive delays as a result of that.[5]

The record does not support Father's contentions that the court failed to consider his historical relationship with Child or that the court failed to consider any of the relevant factors. The record reveals evidence both of Father's historical relationship with Child and the difficulties of maintaining that relationship during Father's incarceration. *See Michael J.*, 196 Ariz. at 251, ¶ 29 (the superior court has discretion to consider each case on its particular facts and in making its determination, can consider all relevant factors).

**¶14**      Father also argues that to support severance based on incarceration, DCS was required to offer evidence that he would not be able to renew and continue his relationship with Child after his release. The inquiry under § 8-533(B)(4), however, focuses on the child's needs during the incarceration and not solely on whether the parent would be able to continue the parent-child relationship after release. *See* A.R.S. § 8-533(B)(4) (severance ground established if parent's sentence is "of such length that the child will be deprived of a normal home for a period of years"); *see also Michael J.*, 196 Ariz. at 252, ¶ 29 (relevant factors include "the availability of another parent to provide a normal home life" and "the effect of the deprivation of a parental presence on the child at issue"); *Maricopa County Juv. Action No. JS-5609*, 149 Ariz. 574, 575 (App. 1986) ("The 'normal home' referred to in the statute relates to respondent's obligation to provide a normal home, a home in which the respondent natural father has a presence, and it does not refer to a 'normal home' environment created by [others]."). Because Child's mother's parental rights already had been terminated, the court found that due to Father's incarceration, there was "no parent who can safely parent [Child] . . . nor is there likely to be one in the near future." As a result, the court noted, by the time of Father's release and possible reunification with Child, "she will have been deprived of a normal home for a period of years (the vast majority of her life)."

**¶15**      Nothing in this Opinion should be taken to mean that a sentence of 2.5 years, as a matter of law, will suffice to support severance pursuant to § 8-533(B)(4). *See Rocky J.*, 234 Ariz. at 441, ¶ 17; *Christy C. v.*

---

[5]      Father contends the court erred by relying on the supervisor's testimony because the caseworker gave conflicting testimony. The superior court, however, is in the best position to "judge the credibility of the witnesses, and make appropriate findings." *Jesus M.*, 203 Ariz. at 280, ¶ 4.

*Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007) ("there is no threshold level under each individual factor in *Michael J.* that either compels, or forbids, severance"). The factual findings the superior court must make before it orders severance of a parent's rights based on incarceration are committed to the court's sound discretion.

## CONCLUSION

**¶16** The court in this case heard conflicting evidence. Although the evidence did not compel the court to grant the motion to terminate Father's rights, sufficient evidence supported the exercise of discretion by the court to order severance. We therefore affirm.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama