NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

COREY C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.C., *Appellees*.

No. 1 CA-JV 16-0397
FILED 3-14-2017

Appeal from the Superior Court in Maricopa County
No. JD528791
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Daniel R. Huff
*Counsel for Appellee DCS*

_____

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Margaret H. Downie and Judge James P. Beene joined.

_____

**J O H N S E N**, Judge:

**¶1**          Corey C. ("Father") appeals the superior court's order terminating his parental rights to his child.  We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**          Father is the parent of a child born in May 2015.  Six weeks before the child was born, Father was indicted on charges of organized retail theft and taken into custody.  After he pled guilty, the court sentenced him in September 2015 to 2.5 years in prison, with presentence incarceration credit of 161 days and a maximum release date in October 2017.  In January 2016, the superior court ordered Father to submit to paternity testing.  Father initially refused to submit, but ultimately was determined to be the child's father.

**¶3**          The child's mother's parental rights were terminated based on abandonment in July 2016.  Soon thereafter, the court held a contested severance hearing on a motion by the Department of Child Safety ("DCS") to sever Father's rights, at which a DCS case manager and Father testified.  The case manager testified that "[d]ue to [Father's] incarceration, [Father] did not have a relationship with [the child]," and "[the child] doesn't have a safe or stable parent to meet her needs."  Father testified that his projected release date is in March 2017, but he could be released as early as December 2016.  He also testified he believes he can establish a relationship with his child upon his release, and he is willing to work with DCS and engage in services to establish a bond and reunite with his child.

**¶4**          The superior court granted termination on the ground that Father's incarceration would deprive the child of a normal home for a period of years under Arizona Revised Statutes ("A.R.S.") section 8-

2

533(B)(4) (2017).[1]  Father timely appealed.[2]  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235(A) (2017), 12-2101(A)(1) (2017) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶5**        The right to custody of one's children is fundamental, but not absolute.  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000).  The superior court may terminate a parent's rights upon clear and convincing evidence of one of the statutory grounds in A.R.S. § 8-533(B), *Michael J.*, 196 Ariz. at 249, ¶ 12, and upon a finding by a preponderance of the evidence that termination is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).  We review the superior court's termination order for an abuse of discretion; we will affirm the order unless its factual findings are clearly erroneous, "that is, unless there is no reasonable evidence to support them."  *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998).

**¶6**        Father does not contest the court's best-interest finding, but argues the evidence did not support the finding that his incarceration "would deprive the child of a normal home with [Father] for a period of years," pursuant to A.R.S. § 8-533(B)(4).

**¶7**        In determining whether a ground for termination exists under § 8-533(B)(4), a court should consider, *inter alia*:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

---

[1]        Absent material revision after the relevant date, we cite a statute's current version.

[2]        Child's mother is not a party to this appeal.

*Michael J.*, 196 Ariz. at 251-52, ¶ 29. There is no particular length of sentence justifying termination, and courts must consider the particular facts of each case. *Id.* at 251, ¶ 29.

¶8        Father contends the superior court abused its discretion by failing to consider the possibility he would be released from prison before the absolute end of his term of incarceration. Contrary to Father's contention, however, the court plainly considered his potential early release, stating in its order that Father's "release date is anticipated to be no earlier than March, 2017 and no later than October, 2017." The superior court must consider the designated length of the sentence, but "[n]o authority requires the court to presume an early release." *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 214, ¶ 8 (App. 2016).

¶9        More generally, the superior court made the following specific factual findings regarding each *Michael J.* factor:

> . . . Father has been continuously incarcerated [since] prior to the child's birth.
>
> . . . There is no degree to which the parent-child relationship can be continue[d] and nurtured during the incarceration, because there was no relationship to nurture, and up until April, 2016, Father was resisting efforts to establish paternity.
>
> . . . The child was not born when [F]ather was incarcerated in April, 2015. Father will be getting out no earlier than March, 2017, and no later than October, 2017.
>
> At the time of the commencement of Father's incarceration, the child was not yet born. At the time of trial, the child is sixteen months old. As of March, 2017, the child will be almost three years of age. As of October, 2017, the child will be three and one half years old.
>
> *            *            *
>
> [Father] was convicted of Retail Theft, a felony offense under Arizona law. [Father] was sentenced on September 15, 2015 to 2.5 years in the Department of Corrections. [Father's] release date is anticipated to be no earlier than March, 2017 and no later than October, 2017.
>
> . . . Mother's rights have been terminated.

> . . . The child had not had a parental presence in her life. Termination would not adversely impact the child as it relates to any parental relationship.

These factual findings are supported by the evidence presented at trial. Because the superior court plainly considered all six factors enumerated in *Michael J.*, and because the court's findings are supported by sufficient evidence, the court did not err in finding the length of Father's incarceration would deprive the child of a normal home for a period of years, pursuant to A.R.S. § 8-533(B)(4).

## CONCLUSION

**¶10**        For the foregoing reasons, we affirm the superior court's order terminating Father's parental rights.

