NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RENEE C., *Appellant*,

*v.*

DANIEL D., K.D., B.D., *Appellees*.

No. 1 CA-JV 18-0478
FILED 7-23-2019

Appeal from the Superior Court in Mohave County
No. B8015SV201704006
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Harris & Winger, PC, Flagstaff
By Chad J. Winger
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

---

**W E I N Z W E I G**, Judge:

¶1        Renee C. ("Mother") appeals the superior court's order terminating her parental rights to K.D. and B.D. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Mother and Daniel D. ("Father") are the biological parents of K.D., born in December 2008, and B.D., born in May 2010. Father lives with K.D. and B.D. in Mohave County. Mother lives in Clark County, Nevada.

¶3        Father and Mother married in California in April 2008. Marital problems arose after K.D. was born. Mother was twice arrested for domestic abuse against Father during their marriage, including in 2010, when she confronted him with scissors and cut his shirt off. Both children were home at the time. Father also reported previous "domestic violence calls from her abusing her previous boyfriend." Father petitioned for divorce in California after the 2010 arrest and moved to Arizona. He and Mother orally agreed to share parenting time and custody of the children.

¶4        Mother continued to have problems. Between 2010 and 2015, the California Department of Child and Family Services ("CDCFS") encountered Mother at least five times and twice removed the children from her care. CDCFS first removed the children in March 2011 because Mother was intoxicated, non-responsive to law enforcement and "staggering." CDCFS again removed the children in October 2013 when Mother's boyfriend became intoxicated and violent with K.D. "for no reason," knocking a glass of milk from the five-year-old's hand with enough force that "it shattered against the wall." A court-appointed investigator confirmed the California records "prov[ed] the child abuse allegations [against Mother] were valid." CDCFS concluded that Mother was unfit to parent and placed the children with Father. A CDCFS worker "strongly recommended that [Father] obtain full sole legal custody of the children."

¶5            Father and Mother finalized their divorced in December 2015. The California court awarded Father sole legal custody of the children and granted Mother "monitored visitation" with the children twice a month. It ordered the visitation "take place in Bullhead City, Arizona, where [Father] and the children reside" and that Mother be responsible for "[t]he cost for the monitored visitation." Mother had four monitored visits with the children in 2015, and two visits in 2016. Her final visit was on December 3, 2016. Since then, Mother has had no in-person contact with the children.

¶6            A visitation supervisor reported Mother "showed up late" to the visits, "would cut visits short" and that "she couldn't control the kids." The supervisor expressed concern for the children's safety, citing examples of when Mother brought pepper spray to the visit; allowed K.D. to start the car with her keys; and nearly crashed into a car and a pedestrian in a parking lot. The supervisor eventually required a second supervisor to attend and monitor the visits to ensure the children's safety.

¶7            Meanwhile, the parents agreed to participate in reunification counseling with the children in July 2016. Mother attended only 12 sessions in the first six months and ended all participation in January 2017, leading the provider to discharge the family in June 2017 because Mother "became non-participatory."

¶8            On June 27, 2017, Father petitioned the superior court in Arizona to terminate Mother's parental rights to K.D. and B.D., alleging abandonment because Mother "ha[d] not had any contact with the minor children since on or about December 15, 2016." *See* A.R.S. § 8-533(B)(1). Mother contested the allegations and moved for a social study, which the court granted. *See* A.R.S. § 8-536(A).

¶9            In a separate family court proceeding, Father petitioned the superior court to establish child support and child support arrears. In September 2017, the court found that Mother owed more than $30,000 in child support arrears and ordered her to pay $700 per month in child support. Mother made one $700 payment in September 2017 and has paid no arrearages.

¶10           The superior court held a contested hearing in August 2018 and terminated Mother's parental rights in September 2018. The court found clear and convincing evidence that Mother had abandoned the children and concluded severance was in the children's best interests. Mother timely appealed. We have jurisdiction pursuant to A.R.S. § 8-235(A) and § 12-2101(A)(1).

**DISCUSSION**

¶11          To terminate parental rights, the superior court must find clear and convincing evidence of at least one statutory ground in A.R.S. § 8-533(B), and that termination is in the child's best interests by a preponderance of the evidence. *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 213, ¶ 5 (App. 2016). We will affirm a severance order unless it is clearly erroneous and accept the court's factual findings unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

### A.     Abandonment

¶12          Parental rights may be terminated if parents abandon their children. A.R.S. § 8-533(B)(1). Abandonment is defined as "the failure of a parent to provide reasonable support and to maintain regular contact with the child," including "normal supervision." A.R.S. § 8-531(1). "Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment." *Id.*

¶13          Mother had no in-person contact with her children for over six months before Father moved to terminate her parental rights and she had not seen her children in almost 23 months when the court terminated her parental rights. Yet Mother argues she has overcome the presumption of abandonment and the court had insufficient evidence for its decision. We disagree.

¶14          Reasonable evidence supports the court's finding that Mother abandoned the children. Even before her visits ended in December 2016, Mother's monitored visits were infrequent and minimal. She did not make a single in-person visit from June 2015 to November 2016. Nor did Mother fully engage in reunification counseling, ending her infrequent attendance after only six months and then being discharged as "non-participatory." Mother also failed to support the children financially. She owed $30,000 in child support arrears.

¶15          Mother only counters the abandonment finding with infrequent phone calls to the children, some text messages in which she asks about them, and an occasional gift. She also claims that her participation in family court litigation shows she "asserted her rights to have contact with her children." But at most, Mother shows "only minimal efforts to support and communicate with the child[ren]," which is still "abandonment" under

4

A.R.S. § 8-531(1).  In sum, the superior court did not err in finding Father had proven abandonment by clear and convincing evidence.

### B.     Best Interests

**¶16**          Mother also contests the best-interests finding.  Termination is in a child's best interests if the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004).

**¶17**          The superior court found the children would be harmed by continuing the parent-child relationship with Mother because her relationship with Father "has been chaotic and dysfunctional," her failure to "follow through with services and parenting time has continued to generate chaos and uncertainty in the children's lives," and she has "not demonstrated a commitment to the children or their well-being for a period of years."  Because reasonable evidence in the record supports these findings, we will not disturb them.

**¶18**          Mother argues that termination is not in the best interests of the children because Father "is not in a relationship and does not have anyone who would be adopting the children," and it would leave the children without "a Mother figure."  But she offers no authority for the argument that termination of a mother's parental rights is not in a child's best interests unless the mother is replaced.  *See Pima Cty. Juv. Severance Action No. S-2462*, 162 Ariz. 536, 539 (App. 1989) ("It is inconceivable that the legislature intended that a plan for adoption be a prerequisite to severance . . . .").

### CONCLUSION

**¶19**          We affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA