NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DAMONE H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.M., Y.M., *Appellees*.

No. 1 CA-JV 19-0047
FILED 8-22-2019

Appeal from the Superior Court in Maricopa County
No.  JD529412
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**W E I N Z W E I G**, Judge:

¶1          Damone H. ("Father") appeals the juvenile court's order terminating his parental rights to L.M. and Y.M.  Father does not contest the statutory grounds for termination, but instead argues that termination was not in the children's best interest.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2          Father and Amori M. ("Mother") are the biological parents of L.M., born in September 2010, and Y.M., born in September 2016.[1]  The Arizona Department of Child Safety ("DCS") seized temporary custody of L.M. in November 2015 and petitioned the juvenile court to find her dependent as to Mother and Father on grounds of abuse and neglect.  DCS referred Father to substance abuse treatment for alcohol consumption, but Father declined treatment.  DCS later asked the juvenile court to return L.M. to her parents and dismiss the dependency petition.  The court did so.  L.M. was returned to Mother and Father in July 2016.

¶3          Y.M. was born in September 2016.  DCS reported "no concerns about th[e] new baby."  Y.M. and L.M. lived with Mother and Father until around April 2017, when the couple separated, and Mother cared for the children alone.

¶4          DCS reentered the picture a few months later.  Mother's mental health had deteriorated and she was reportedly neglecting the children.  DCS removed L.M. and Y.M. from Mother's care and filed a second dependency petition in September 2017.  DCS could not locate Father.

¶5          Health professionals examined the children.  L.M. was diagnosed with developmental delays.  She exhibited aggressive and sexualized behaviors in foster care.  She claimed her parents had abused

---

[1]          The court also terminated Mother's parental rights.  Mother did not contest the termination and is not part of this appeal.

her and she had seen them fight. She had also watched pornography with her parents and seen them engage in sexual behavior. L.M. received treatment for her special needs and trauma throughout the dependency, including therapy, counseling and behavioral coaching.

¶6 Y.M. also had special needs. She was "diagnosed with severe development delays, including issues with solid foods, speech, and mood instability," and participated in disability services during the dependency.

¶7 Father learned the children were removed from Mother's care in November 2017 and he contacted DCS. DCS required Father to submit to a drug test and referred him for substance abuse treatment and drug testing after he tested positive for alcohol.

¶8 Beginning in January 2018, Father received supervised visits and parent aide services. Father's visits initially made the children "fearful," "uneas[y]" and "tearful," but their distress later subsided with ongoing therapeutic visitation.

¶9 DCS continued to have concerns about Father's substance abuse. He tested positive for alcohol two more times in November 2017, tested positive for alcohol and methamphetamine in January 2018, and missed 11 consecutive drug tests in January and February 2018. Meanwhile, Father's substance abuse treatment services were closed because the provider could not "substantiate a substance use diagnosis" and Father denied having a problem with substances.

¶10 The juvenile court found the children dependent as to Father in February 2018 and adopted a case plan of family reunification. DCS explained that Father needed to understand the effect of his substance abuse on the family, commit to sobriety and show he could meet his children's special needs.

¶11 Father resumed drug testing in March 2018, but did not quit using alcohol and other substances. He tested positive on nine occasions for alcohol, ethyl glucuronide ("ETG") or ethyl sulfate between March to mid-April, refused nine tests in May, and tested positive for one or more of the substances each month from June to November 2018. DCS again referred Father to substance abuse treatment in April and August 2018, but Father failed to "consistently engage" and never completed the program.

¶12 Father visited a licensed psychologist, Dr. Alex Levitan, in May and July 2018 for an evaluation and risk assessment. Dr. Levitan diagnosed Father with "unspecified alcohol-related disorder," which "may

negatively impact his ability to parent" during stressful periods and may cause him "difficulty providing support and a safe and consistent environment for his children." He also found that children in Father's care were "likely to be at an elevated level of risk" and Father had "minimal insight into his children's psychosocial and developmental needs." Dr. Levitan ultimately found a poor prognosis that Father would demonstrate minimally adequate parenting skills in the near term.

¶13        The juvenile court changed the case plan to severance and adoption in August 2018 over Father's objection. DCS petitioned to terminate Father's parental rights on grounds of chronic alcohol abuse and nine months' out-of-home placement as to both children and prior removal as to L.M. alone. A.R.S. § 8-533(B)(3), (8)(a), (11). The court terminated Father's parental rights after a December 2018 severance hearing, where it admitted several exhibits and heard testimony from the DCS specialist and Dr. Levitan. The court found statutory grounds of chronic alcohol abuse as to both children and prior removal as to L.M. The court also found that termination was in the children's best interests. Father timely appealed.

## DISCUSSION

¶14        To terminate parental rights, the juvenile court must find clear and convincing evidence of at least one statutory ground in A.R.S. § 8-533(B), and that termination is in the children's best interests by a preponderance of the evidence. *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 213, ¶ 5 (App. 2016). We will affirm a severance order unless it is clearly erroneous and accept the court's factual findings unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶15        The sole issue on appeal is whether termination was in the children's best interest. Termination is in a child's best interests if the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004).

¶16        Father claims the court had insufficient evidence to find that termination was in the children's best interest. We disagree. The record has ample evidence to support the finding. The children were placed in an adoptive placement "capable of caring for [their] basic and special developmental needs" and offered a "stable and permanent home free of substances, domestic violence, and trauma." Meanwhile, Father could not "control his drinking, understand the special needs of the [c]hildren or

demonstrate an ability to care for them."  At most, Father points to evidence he deems more favorable to his position, but we do not reweigh the evidence on appeal.  *See Joelle M. v. Dep't of Child Safety*, 245 Ariz. 525, 528, ¶ 18 (App. 2018).

**¶17**　　　　Father also argues the juvenile court "erred in not requiring more in the best interests analysis than finding that Father drinks alcohol," and did not "consider the totality of the circumstances including Father's rehabilitation efforts and the existing bond between Father and children." *See, e.g.*, *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018) (juvenile court "must consider the totality of the circumstances existing at the time of the severance determination, including the . . . parent's rehabilitation"). We reject Father's narrow characterization of the juvenile court's analysis. The record does not indicate the court failed to consider the totality of the circumstances.  *See Fuentes v. Fuentes*, 209 Ariz. 51, 55-56, ¶ 18 (App. 2004) (trial court presumed to have considered all the evidence).  Nor did the court focus only on Father's alcohol abuse.  The court properly considered the benefits of termination and detriments of a continued parental relationship, finding that termination was in the children's best interest because the current adoptive placement met their special needs in a safe and stable environment, and Father could not meet their special needs.

## CONCLUSION

**¶18**　　　　We affirm.

