NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SAM H., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, S.H., I.H., *Appellees.*

No. 1 CA-JV 20-0042
FILED 8-6-2020

Appeal from the Superior Court in Maricopa County
No. JD34482
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge D. Steven Williams and Judge David D. Weinzweig joined.

---

**T H U M M A**, Judge:

**¶1**        Sam H. (Father) challenges the superior court's order terminating his parental rights to his biological children S.H. and I.H. Father argues the order improperly terminated his parental rights based on length of felony sentence grounds. Because Father has shown no error, the order is affirmed.

### FACTS AND PROCEDURAL HISTORY

**¶2**        S.H. was born in 2014 and I.H. was born in 2015, to Father and Mother, Brittany Y.[1] In March 2016, Father was arrested and later convicted for aggravated assault. Father was sentenced to five years imprisonment with an anticipated release in mid-2020.

**¶3**        The children were in Mother's care until June 2017, when the Department of Child Safety (DCS) filed a dependency petition given concerns about her substance abuse, neglect and failure to protect. After finding the children dependent as to Mother, the court adopted a remain with family/family reunification case plan. It took months to identify Father and complete paternity testing. S.H. and I.H. were placed with their maternal grandmother for a time and then in two separate foster homes. Father had telephonic visits with the children every two weeks. By November 2018, he had in-person visits every three months.

**¶4**        In May 2019, the court changed the case plan to severance and adoption and DCS moved to terminate in June 2019. DCS alleged Father's length of felony sentence would deprive the children of a normal home. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(4) (2020).[2] At the end of the December

---

[1] Mother's parental rights to S.H. and I.H. have been terminated and she is not a party to this appeal.

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

2019 severance adjudication hearing, the court terminated Father's parental rights. This court has jurisdiction over Father's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1) and Arizona Rules of Procedure for the Juvenile Court 103 and 104.

## DISCUSSION

**¶5**      As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the children. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

**¶6**      A parent's rights may be terminated when "the parent is deprived of civil liberties due to the conviction of a felony. . . if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. §8-533(B)(4). In assessing such a claim, the court "should consider all relevant factors," including:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J.*, 196 Ariz. at 251-52 ¶ 29. The focus is on whether the "child's needs during the incarceration" are met, not "whether the parent would be able to continue the parent-child relationship after release." *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 215 ¶ 14 (App. 2016).

**¶7** Father argues he could have nurtured a relationship with S.H. and I.H. while incarcerated and could have provided stability upon his release. The superior court, however, properly weighed and considered all relevant factors, including the six *Michael J.* factors, in granting the motion to terminate. First, the relationship when Father's incarceration began was limited and brief. S.H. was only 21 months old and I.H. only four months old at the time of Father's incarceration. And Father had not yet established paternity of I.H.

**¶8** Second, Father's ability to nurture a relationship with the children while incarcerated is limited. He had no visits with the children before DCS' involvement because "Mother and paternal grandmother did not see eye to eye." Starting in September 2018, Father had telephonic visits every two weeks, but the conversations were short, and the children were easily distracted. By November 2018, Father began having in-person visits with the children once every three months. To his credit, Father wrote letters to S.H. and I.H. on their birthdays and Father's Day. But he missed significant milestones, such as their first day of school and holidays.

**¶9** Third, the children have been deprived of a normal home for a period of years. During Father's incarceration, Mother was unable to provide stability. As a result, the children have been deprived of a normal home throughout Father's incarceration. Moreover, they will lack stability and normalcy after his release. As Father admitted at trial, he would be unable to provide care for a significant period of time after his release.

**¶10** Fourth, as to the length of the incarceration, "[w]hat matters to a dependent child is the total length of time the parent is absent from the family, not the more random time that may elapse between the conclusion of legal proceedings for severance and the parent's release from prison." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 281 ¶ 8 (App. 2002). Although Father's early release date is mid-2020, he has been incarcerated for most of his children's lives. Father was taken into custody when S.H. was 21 months old and I.H. was four months old. By the time Father is released, S.H. will be six years old and I.H. will be five years old. Father also testified that he will need some time to "get . . . on his feet" following release. He does not have any relatives to provide stability for the children while he does so, and he does not know how long that process will take. Reunification immediately upon Father's release is impossible, and the children would continue to experience instability for an uncertain length of time after his release.

¶11     Fifth, Mother is unavailable to provide a normal home life for the children. Indeed, Mother's inability to do so caused the children to be taken into care. Mother's parental rights were later terminated.

¶12     Sixth, there was little direct evidence on the effect of Father's absence in the children's lives. However, given he has been incarcerated since 2016, he has been absent for most of their lives. That fact, coupled with Mother's inability to parent, has caused the children to be in care for a substantial portion of their lives.

¶13     On this record, Father has not shown that the court's findings were unsupported by reasonable trial evidence or that the court misapplied the law. Accordingly, Father has shown no error in the order terminating his parental rights based on the length of his felony sentence.

## CONCLUSION

¶14     The order terminating Father's parental rights to S.H. and I.H. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:     AA