NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO I.M.

No. 1 CA-JV 23-0094
FILED 9-14-2023

---

Appeal from the Superior Court in Maricopa County
No.  JS21282
The Honorable Amanda S. Chua, *Judge Pro Tempore*

**AFFIRMED**

---

COUNSEL

Maricopa County Legal Defender, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Law Office of Ed Johnson, PLLC, Phoenix
By Edward D. Johnson
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

_____

**F O S T E R**, Judge:

**¶1**        M.M. ("Father") appeals the superior court's order terminating his parental rights to I.M. ("Child") in a private severance matter. For the following reasons, this Court affirms.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Father and R.L. ("Mother") were married in March 2011. Mother was pregnant at the time. After marrying, Mother and Father lived together in maternal grandmother's home. But before Child was born in September 2011, Father moved out; Mother cared for Child with little support from Father. In 2012, Mother and Child again went to live with Father at another relative's home. For about a month, Father cared for Child while Mother worked, but Father never provided adequate support, including diapers or formula. After about a month, Mother and Child left. Later that year, Mother obtained an order of protection against Father, which he never learned of before it expired.

**¶3**        After Mother moved out, Father's time with Child involved only a few hours on sporadic weekends and occasionally when Child would visit paternal grandmother. Father's financial support consisted of $50 or $100 at random intervals, but even this ceased by 2015, around the time that Mother and Father divorced. Father never provided school clothing or supplies and rarely provided gifts or cards during holidays, though he did give Child a tea set for Christmas in 2016.

**¶4**        In 2015, after entry of a default divorce decree, Mother obtained sole legal custody of Child; Father was awarded no parenting time. Father never sought to gain legal decision-making or parenting time regarding Child, and since the default dissolution of marriage he has made no attempts to exercise his parental rights. Father last saw Child in person in 2018, before he was incarcerated for a felony conviction later that year. Father's conviction resulted in a lengthy sentence; his current release is scheduled for 2030. Before the severance proceedings began, but during

Father's incarceration, he sent only one text message, in May 2022, to Mother requesting to see Child.

¶5        Mother met F.L. ("Stepfather") in 2013 and married him in 2017. Since 2013, Stepfather has been the consistent father figure in Child's life. He has participated in Child's school activities, taken Child to doctor and dentist appointments, and has taken an interest in Child's hobbies. Stepfather has also financially provided for Child. Child identifies Stepfather as her dad and wants him to adopt her. Stepfather is willing to adopt Child.

¶6        With this background, in June 2022, Mother petitioned to terminate Father's rights to Child on the grounds of abandonment and felony conviction. Father responded, asserting that he was making efforts to maintain his relationship with Child. After two days of trial, on April 7, 2023, the juvenile court ordered termination of Father's parental rights, finding among other things that "Father made minimal efforts to maintain a relationship with the Child" since his incarceration, and "failed to undertake any of the myriad of responsibilities associated with parenting." Father timely appealed on April 17.

¶7        This Court has jurisdiction under A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

¶8        To terminate parental rights, a court must find a statutory ground for termination exists by clear and convincing evidence and that termination serves the child's best interests by a preponderance of the evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 42 (2005). "[T]he juvenile court is in the best position to weigh evidence and assess witness credibility," so this Court will uphold the juvenile court's termination order unless clearly erroneous and accept its findings of fact if supported by reasonable evidence and inferences. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016). This Court views the juvenile court's facts in the "light most favorable to affirming the" juvenile court's order. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249-50, ¶ 20 (2000). This Court reviews termination orders for abuse of discretion. *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 213, ¶ 5 (App. 2016).

**I.        THE JUVENILE COURT DID NOT ABUSE ITS DISCRETION BY FINDING ABANDONMENT AS GROUNDS FOR TERMINATING FATHER'S RIGHTS TO CHILD.**

**¶9** Father first contends the juvenile court erred in terminating his rights on the ground of abandonment, claiming no evidentiary support for the court's findings, and that the court ignored Mother's inconsistent testimony and acts that restricted Father's contact with Child.

**¶10** The juvenile court may terminate parental rights if "the parent has abandoned the child." A.R.S. § 8-533(B)(1). "'Abandonment' means the failure of a parent to provide reasonable support and to *maintain regular contact with the child*, including providing normal supervision" but also covers when "a parent has made only minimal efforts to support and communicate with the child." A.R.S. § 8-531(1) (emphasis added). "Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes *prima facie* evidence of abandonment." *Id.* This test is objective, measuring "whether a parent has provided reasonable support, maintained reasonable contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Michael J.*, 196 Ariz. at 249-50, ¶ 18.

**¶11** Father argues the court abused its discretion in finding the statutory requirements for abandonment had been met. First, Father attacks the court's findings that "Father made no efforts to maintain a connection with the Child" after incarceration, "Father failed to demonstrate any effort to have contact with the Child while incarcerated," and that "Child's last contact with a member of Father's family was in 11/2021." Father supports his position with one text message he sent Mother in May 2022, asking to see Child and his testimony that he sent Child, through paternal grandmother, cards for every birthday and holiday while maintaining phone and video interactions facilitated by paternal grandmother. He also points to Mother's action of taking away Child's phone after paternal grandmother sent text messages during the termination litigation as evidence of Mother's interreference with his efforts.

**¶12** Although this Court agrees with Father that he made some efforts to contact Child, those efforts, viewed in the light most favorable to Father, were minimal and do not overcome the otherwise overwhelming evidence of abandonment. The superior court did not err by concluding that Father's efforts to maintain a relationship with Child after Father began serving his prison sentence have been minimal and that he has abandoned Child.

**¶13** Second, Father argues that the court abused its discretion by minimizing Mother's inconsistent testimony and disregarding Mother's

actions limiting Father's contact with Child. "The juvenile court is in the best position to assess witness credibility," including inconsistent testimony, so this Court "will not reweigh evidence or consider the credibility of witnesses on appeal." *In re James P.*, 214 Ariz. 420, 425, ¶ 24 (App. 2007). Moreover, the court considered Mother's actions, including that "Mother did not disclose her mailing address to father when she moved" and that Mother had obtained an order of protection against Father. The court weighed these actions against Father's inaction: although he had access to communicate with Child through maternal grandmother, he made no efforts to contact Child during the year that the order of protection was in place and Father made minimal efforts to contact Child through available channels thereafter. The superior court did not abuse its discretion by concluding that "Mother's actions do not rise to the level of interference required to establish a defense to abandonment."

## II. BECAUSE THE JUVENILE COURT DID NOT ABUSE ITS DISCRETION REGARDING ABANDONMENT, FATHER'S FELONY CONVICTION ARGUMENT IS MOOT.

¶14 Next, Father contends the court abused its discretion by terminating his rights on the grounds of his criminal conviction. This issue is moot given this Court's holding that the superior court did not err by finding abandonment. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.")

## III. THE JUVENILE COURT PROPERLY CONSIDERED CHILD'S BEST INTERESTS.

¶15 Lastly, Father contends the juvenile court failed to consider the totality of the circumstances when looking at Child's best interests. In such determinations, "protect[ing] a child's interest in stability and security" is the court's foremost concern. *Demetrius L.*, 239 Ariz. at 4, ¶ 15 (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 34 (2005)) (alteration in original). The court may base its finding on either harm caused by denying termination or benefit gained from termination, including "the child's prospective adoption." *Id.* at 4-5, ¶ 16. Father essentially reiterates his arguments presented above.

¶16 Here, the juvenile court noted its consideration of "Father's efforts toward reunification," and that "Child knew her father back in 2018." But the court also found that Child "barely knows her Father now"

and Child calls Stepfather "Dad." The evidence discussed above reflects Father's minimal efforts to support or maintain contact with Child for most of Child's life, including during his current incarceration. The superior court appropriately considered the possibility that Child may be adopted by Stepfather, who has supported Child since 2017 and is willing to adopt her. The superior court did not abuse its discretion by finding that terminating Father's parental rights was in Child's best interests.

## CONCLUSION

¶17        For the foregoing reasons, this Court affirms.



AMY M. WOOD • Clerk of the Court
FILED:    AA