NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

TRUNG N., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.C., *Appellees.*

No. 1 CA-JV 19-0146
FILED 10-17-2019

Appeal from the Superior Court in Maricopa County
No. JD35333
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

¶1          Trung N. (Father) challenges the superior court's order terminating his parental rights to his biological child J.C. Father argues the order improperly terminated his parental rights based on length of felony sentence grounds and in finding termination was in the child's best interests. Because sufficient evidence supports both findings, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2          J.C. was born in 2012 to Father and Heather C. (Mother).[1] Father, Mother and J.C. lived together for little more than a year until Father was arrested (in late December 2013), then charged and convicted of trafficking in stolen property, a Class 3 felony. In October 2014, Father was sentenced to seven years in prison, with an anticipated release date of October 2019, and a maximum release date of January 2020.

¶3          During Father's incarceration, J.C. and Mother first lived with J.C.'s maternal grandmother (Grandmother). In January 2018, after Mother was arrested, the Department of Child Safety (DCS) took J.C into custody. DCS filed a dependency petition and the court placed J.C. with Grandmother. In February 2018, J.C. was found dependent as to both parents, and the court adopted a family reunification case plan. In October 2018, DCS filed a motion to terminate, alleging length of felony sentence as to Father. *See* Ariz. Rev. Stat. (A.R.S.) section 8-533(B)(4) (2019).[2]

---

[1] Mother's parental rights to J.C. have been terminated and she is not a party to this appeal.

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**¶4** After a severance adjudication in April 2019, during which a DCS caseworker and Father testified, the superior court granted the motion. This court has jurisdiction over Father's timely appeal pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶5** As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *see also Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citations omitted).

**I.     Reasonable Evidence Supports The Superior Court's Finding That DCS Proved Termination Was Proper Based On Father's Length Of Felony Sentence.**

**¶6** A parent's rights may be terminated when "the parent is deprived of civil liberties due to the conviction of a felony . . . if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). In assessing such a claim, the court should consider "all relevant factors," including:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J.*, 196 Ariz. at 251–52 ¶ 29. The focus is on whether the "child's needs during the incarceration" are met, not on "whether the parent would be able to continue the parent-child relationship after release." *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 215 ¶ 14 (App. 2016).

¶7        The superior court properly considered all relevant factors, including the six *Michael J.* factors. First, although Father had a parent-child relationship with J.C. before Father's incarceration, this period was short, lasting only about 16 months.

¶8        Second, Father's contact with J.C. while incarcerated has been intermittent. While in jail, Mother and J.C. visited Father once a week; but when Father was transferred to prison in Douglas, about ten months later, he only saw J.C. about twice a year given the distance involved. These personal visits stopped altogether near the end of 2016 or early 2017 when Mother stopped bringing J.C. for visits. At the time of the severance trial, Father had not seen J.C. for more than two years. Similarly, although Father testified he would call J.C. weekly, in October 2017 Mother stopped taking the calls. Several times a month, Father sent letters to Mother and received information regarding J.C. from her. Mother stopped responding to letters around the time the personal visits ceased. Even when Mother stopped sending letters, answering phone calls and visiting, Father continued to send some letters and to make phone calls to J.C. through DCS.

¶9        Father argues DCS should have done more to facilitate in-person contact with J.C. Although the termination order does not explicitly discuss DCS' choice not to facilitate in-person visits, J.C.'s case manager testified that in-person visits were "unrealistic" for a six-year-old because of the long drive to prison and there was no adult "willing or appropriate" to take J.C. to visit. Although Father made efforts to maintain contact with J.C., reasonable evidence supports the court's finding, based on the totality of the circumstances, that the degree to which the parent-child relationship could be continued and nurtured during incarceration weighed in favor of termination. *See State v. Fischer*, 242 Ariz. 44, 52 ¶ 28 (2017) ("The appellate court's role is not to weigh the evidence."); *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98 ¶ 9 (App. 2016) ("Mother is in essence asking us to reweigh the evidence presented to the juvenile court. We decline to do so.").

¶10       Third, the responsibility to provide a normal home rests with the parent, not with other family members. *See Maricopa Cty. Juv. Action No. JS–5609*, 149 Ariz. 573, 575 (App. 1986). J.C. has not had a healthy home for many years. Father was incarcerated when J.C. was little more than a year

old. Since late 2017, J.C. has been living with Grandmother because of Father's incarceration and Mother's struggles.

¶11        Fourth, when assessing the length of incarceration "[w]hat matters to a dependent child is the total length of time the parent is absent from the family, not" the time remaining until release. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 281 ¶ 8 (App. 2002). Therefore, although Father's early release date is in October 2019 and maximum release in January 2020, the fact remains that Father has been incarcerated for most of J.C.'s life. J.C. was just a year old when Father was incarcerated and will be seven by the time Father is released. Furthermore, even though Father has commendably obtained his GED, worked as an auto mechanic and taken numerous self-improvement classes while in prison, reunification may not occur immediately upon his release. The trial evidence indicates, and the superior court found, that he will need to participate in and successfully complete various services after his release from prison before any reunification could begin. The court did not err in weighing this factor.

¶12        Fifth, since late 2017 Mother has not provided a normal home for J.C. Moreover, J.C. was found dependent as to Mother, her parental rights were then terminated and she is not available to provide a normal life for J.C., who has been living with Grandmother.

¶13        Sixth, there was little direct evidence as to the effect of Father's absence in J.C.'s life. However, the superior court noted, and the record shows, that J.C. had only seen Father "a handful of times since October 2014, and not at all since December 2016/January 2017." This absence, coupled with Mother's inability to care for J.C., resulted in Grandmother "provid[ing] all of [J.C.'s] care for an extended period."

¶14        On this record, Father has failed to show that the superior court's findings were not supported by trial evidence or otherwise were an abuse of discretion. Accordingly, the finding of grounds for termination of parental rights pursuant to length of felony sentence is affirmed.

**II.    Father Has Not Shown The Superior Court Erred In Finding Termination Was In The Best Interests Of The Child.**

¶15        Father argues insufficient evidence showed termination was in J.C.'s best interests. This court reviews the best interests finding for an abuse of discretion. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369 ¶ 15 (App. 2018) (citations omitted). If a court has found the existence of a statutory ground for termination, the court "can presume that the interests of the parent and child diverge." *Alma S. v. Dep't of Child Safety*, 245 Ariz.

146, 150 ¶ 12 (2018) (quoting *Kent K.*, 210 Ariz. at 286 ¶ 35). At this point, the "child's interest in stability and security" are the court's main concern. *Demetrius L. v. Joshlynn F.,* 239 Ariz. 1, 4 ¶ 15 (2016) (quoting *Kent K.*, 210 Ariz. at 286 ¶ 34). Therefore, termination is in a child's best interests if either the child will benefit from severance or be harmed if the parent-child relationship continues. *See Matter of Appeal in Maricopa County Juvenile Action No. JS-500274,* 167 Ariz. 1, 5 (1990).

¶16 Although Father argues J.C. will not be harmed by a continuation of their relationship and testified he is committed to parenting J.C. and that they have a bond, a court need not determine that a continued relationship is detrimental; a court need only find that the child would affirmatively benefit from severance. *See id.* In doing so, the court is directed to consider the totality of the circumstances, *Alma S.*, 245 Ariz. at 150–51 ¶ 13, including whether adoptive placement is immediately available, whether the child's current placement is meeting the needs of the child or whether the child is adoptable, *see Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379 ¶ 30 (App. 2010) (citing cases). Here, "the child's prospective adoption is a benefit that can support a best-interests finding." *Demetrius L.*, 239 Ariz. at 4 ¶ 16 (citation omitted).

¶17 The superior court properly could find J.C. will benefit from adoption and reunification with Father will not be immediate upon his release. J.C. has been in Grandmother's care since late 2017 and she has plans to adopt him. J.C. has bonded with Grandmother and he is doing well in this familial placement. Father testified Grandmother is a good caretaker for his son. Considering these facts, Father has failed to show the court erred in finding severance in the best interests of J.C.

## CONCLUSION

¶18 Because Father has shown no error, the order terminating his parental rights to J.C. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA