NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS
AS TO B.H. and J.H.

No. 1 CA-JV 22-0200
FILED 6-6-2023

Appeal from the Superior Court in Maricopa County
No.  JD15187
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Emily M. Stokes
*Co-Counsel for Appellee DCS*

The Huff Law Firm, Tucson
By Laura J. Huff, Daniel J. Huff
*Co-Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer B. Campbell joined.

---

**W E I N Z W E I G,** Judge:

¶1 Billy H. ("Father") appeals from the juvenile court's order terminating his parental rights to B.H. and J.H. We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 Father and Savannah S. ("Mother") are the natural parents of twins, B.H. and J.H., who were born in July 2020. A month earlier, Mother and Father were arrested when police stopped them for speeding and learned they were driving a stolen vehicle. Police found several empty and full syringes inside the car, along with methamphetamine and drug paraphernalia. Mother tested positive for methamphetamine at the hospital. The twins tested positive at birth.

¶3 Three days after their birth, the Department of Child Safety ("DCS") secured custody of the twins. Father became aggressive when served with notice that DCS would be taking temporary custody of the twins; he threatened violence against hospital staff and DCS investigators, and was arrested for criminal damage. DCS placed the twins in a licensed foster home, where they still live today.

¶4 Father was arrested in August 2020 and September 2020 for several felony offenses and missing a court date on bail. He has been incarcerated since September 2020. The juvenile court found the twins dependent as to Mother and Father in October 2020.

¶5 Father pled guilty to three felonies (theft of means of transportation, trafficking in stolen property, and fraudulent schemes). In March 2021, Father was sentenced to four years in prison and ordered to pay nearly $70,000 in restitution to his victims. Father will be released in April 2024, but could be released earlier in October 2023.

¶6 DCS petitioned the juvenile court to terminate Father's parental rights in January 2022, alleging the length-of-incarceration ground. *See* A.R.S. § 8-533(B)(4). The juvenile court held evidentiary hearings in

April and June 2022, when it heard testimony from Father, Mother, paternal grandmother and the DCS unit supervisor. Father argued that paternal grandmother should be appointed as the twins' guardian.

**¶7** The court terminated Father's parental rights on the ground alleged. Father timely appealed. We have jurisdiction. *See* A.R.S. §§ 8-235 and 12-120.21(A)(1).

## DISCUSSION

**¶8** Parents have a fundamental but not absolute right to the custody and control of their children. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000). To terminate parental rights, the juvenile court must find at least one statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence, and that termination is in the child's best interests by a preponderance of the evidence. *Id.* at 249, ¶ 12; *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). We will affirm the court's decision if supported by reasonable evidence, *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997), viewing the evidence in the light most favorable to sustaining the court's decision, *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

**¶9** A parent's parental rights may be severed under the length-of-incarceration ground "if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). The statute sets out no "'bright line' definition of when a sentence is sufficiently long to deprive a child of a normal home for a period of years," and our supreme court has described "the inquiry [as] individualized and fact specific." *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 9 (2021) (citation omitted).

**¶10** Our supreme court has articulated six non-exclusive factors to determine whether a parent's incarceration compels termination of parental rights, including:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J.*, 196 Ariz. at 251–52, ¶ 29. "A lack of evidence on one or several of [these] factors may or may not require reversal or remand on a severance order." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007).

**¶11**        Father contends the record does not support termination under these non-exclusive factors. We examine each factor in turn.

**¶12**        <u>Pre-incarceration relationship.</u> The first factor is "the length and strength of any parent-child relationship existing when incarceration begins." *Michael J.*, 196 Ariz. at 251–52, ¶ 29. The juvenile court found that Father "had virtually no relationship with [the twins] prior to his incarceration," and the record has reasonable evidence to support that finding. Father was incarcerated only two months after the twins were born; even Father concedes he did not establish a strong relationship with them in that fleeting period. This factor weighs in favor of termination.

**¶13**        <u>Relationship during incarceration.</u> The second factor is "the degree to which the parent-child relationship can be continued and nurtured during the incarceration." *Id.* at 252, ¶ 29.

**¶14**        The record shows Father has developed a relationship with the twins while incarcerated. Since his incarceration, Father has attended weekly virtual meetings with the twins, and the twins recognize Father during those visits. DCS acknowledged this bond, noting that Father has appropriately engaged with the twins and respected their short attention span. In April 2022, DCS reported that Father "has done well in establishing and maintaining a relationship with his children despite his incarceration. [DCS] commends him for that as it is not always the case." Father has also sent birthday cards to the twins, used his tablet to communicate with their foster placement, and completed parenting classes in prison.

**¶15**        But paternal grandmother, who Father asked to be appointed the twins' guardian, only visited the twins a few times since Father's incarceration. On balance, this factor weighs against termination.

**¶16**        <u>Age of children and deprivation of normal home.</u> The third factor is "the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home." *Id.* The juvenile court found that "[t]he children have been without a safe parental caretaker for their entire lives," and the record has reasonable evidence to support that finding.

**¶17**      The twins were just two months-old when Father was jailed, and Father has been physically absent their entire lives. They will have turned three years-old when Father is released and have never lived with Father during that significant developmental period. A DCS witness offered testimony about the importance of these early years and concluded that Father's late introduction would impair the twins' chances for a normal home. The twins call their foster placement mom and dad. And weekly virtual visits are not a normal home.

**¶18**      On top of that, Father will be placed on probation when released from prison and require significant services. He will also owe a substantial debt in restitution to his victims, further impairing his ability to provide a normal home.

**¶19**      Father counters that the juvenile court did not consider he could be released about a year after the termination hearing. We are not persuaded. The "relevant period is the entire period of incarceration, not solely the time after entry of the termination order," *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 214, ¶ 9 (App. 2016), and the juvenile court may consider a parent's anticipated release date, *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 550, ¶ 15 (App. 2010). This factor favors termination.

**¶20**      Length of absence. The fourth factor is "the length of the sentence." *Id.* The juvenile court recognized that Father was sentenced to a four-year prison sentence, and found that "[w]hen Father is released, he will not be ready to parent for a significant period of time." The record has reasonable evidence to support this finding. Father is scheduled to be released in April 2024, so the twins will have turned three years-old, and he will have been imprisoned for nearly their entire life.

**¶21**      Beyond that, Father will need time to adjust before any possible reunion with the twins. He will need a job and a house, which are complicated by his long criminal history. He will also need substantial services and counseling before any reunification, including parenting classes and a "full assessment, treatment, and monitoring" of substance abuse issues, which he still denies. This factor favors termination.

**¶22**      Available parent. The fifth factor is "the availability of another parent to provide a normal home life." *Michael J.*, 196 Ariz. at 252, ¶ 29. The juvenile court found "[t]here is no other parent available to provide a normal life," and "Mother is not available to parent and will not be ready to do so for an indefinite period of time." The record has

reasonable evidence in support. The juvenile court terminated Mother's parental rights and her appeal was dismissed.

¶23          Father counters that the juvenile court did not account for *Timothy B. v. Department of Child Safety*, 252 Ariz. 470 (2022), in which our supreme court held that juvenile courts should also "consider the availability of a permanent guardian to provide a normal home life if another parent is unavailable." *Id.* at 477, ¶ 27. At the termination hearing, paternal grandmother testified that she would accept an appointment as the twins' guardian.

¶24          We are not persuaded. *Timothy B.* is distinguishable for several reasons. There, unlike here, the alternative permanent guardian (the child's aunt) presented evidence that she could provide a "normal home," including a successful home study, *id.* at 477, ¶ 28, the child had previously lived for years with the aunt, *id.* at 472, ¶ 3, and the child had developed a strong bond with the aunt, *id.* at 477, ¶ 28. And there, unlike here, the aunt had formally requested guardianship and sought a change of custody before the termination hearing. *Id.* at 473, ¶ 5.

¶25          Moreover, the juvenile court questioned grandmother's commitment, noting her prior preference that the current foster placement adopt the twins. We do not reweigh the juvenile court's credibility determinations. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶ 15 (App. 2014). This factor favors termination.

¶26          <u>Effect of deprivation.</u> The sixth factor is "the effect of the deprivation of a parental presence on the child at issue." *Michael J.*, 196 Ariz. at 252, ¶ 29. The juvenile court found that "[t]he children have been without a safe parental caretaker for their entire lives," and "[w]hen Father is released, he will not be ready to parent for a significant period of time." Because the record has reasonable evidence in support, this factor weighs in favor of termination.

¶27          On this record, the juvenile court did not abuse its discretion when it terminated Father's parental rights on the length-of-incarceration ground.

## CONCLUSION

¶28      We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA