NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO G.B.

No. 1 CA-JV 23-0027
FILED 10-3-2023

---

Appeal from the Superior Court in Maricopa County
No. JD41099
The Honorable Amanda M. Parker, Judge

**AFFIRMED**

---

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Co-Counsel for Appellee Department of Child Safety*

The Huff Law Firm, PLLC, Tucson
By Daniel R. Huff, Laura J. Huff
*Co-Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Michael S. Catlett and Judge Maria Elena Cruz joined.

---

**W E I N Z W E I G**, Judge:

¶1         Kaylynn K. ("Mother") appeals the juvenile court's order terminating her parental rights to G.B. ("Child") based on the length of her incarceration for felony convictions.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2         Mother and Christian B. ("Father") are biological parents of Child, born in June 2021.  Father consented to the termination of his parental rights and is not a party here.  Child tested positive for methamphetamine and fentanyl at birth, and was hospitalized for 11 days.  Mother did not visit child for 10 of those days.

¶3         The Department of Child Safety ("DCS") was alerted about the positive drug test and investigated.  Mother admitted using methamphetamine and fentanyl during the pregnancy, but she refused to take any drug tests.

¶4         DCS took temporary custody of Child when he was discharged from the hospital and placed him with his paternal grandmother.  DCS offered reunification services to Mother, including random urinalysis testing, substance abuse treatment, transportation, supervised visits and parenting classes.  Mother would not engage and failed to participate in these services.  Child's paternal grandmother repeatedly asked Mother to visit Child, even offering to arrange rides, but Mother did not visit.

¶5         Less than three months after Child's birth, Mother was arrested and incarcerated for possession of narcotic drugs, possession of drugs and drug paraphernalia, and possession of narcotic drugs for sale.  Mother was sentenced to three years' incarceration for her felony drug convictions in April 2022.

¶6         DCS encouraged Mother to participate in available reunification services, including parenting, substance abuse and anger-

management classes.  Mother remained disengaged and disconnected from Child while incarcerated with seven total video calls, but she completed some available programs, including substance abuse and parenting classes.

**¶7**      DCS moved to terminate Mother's parental rights based on neglect and length of incarceration.  After a two-day trial, the court terminated Mother's parental rights on the length-of-incarceration ground, finding that Mother had no existing relationship or bond with Child before her incarceration, and that DCS "made diligent and appropriate efforts at reunification."  Mother timely appealed.  We have jurisdiction. *See* A.R.S. §§ 8-235(A), 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶8**      Parents have a fundamental but not absolute right to the custody and control of their children. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000).  To terminate parental rights, the juvenile court must find at least one statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence, and must find that termination is in the child's best interests by a preponderance of the evidence. *Michael J.*, 196 Ariz. at 249, ¶ 12; *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005).  We will affirm the court's decision if supported by reasonable evidence, *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997), viewing the evidence in the light most favorable to sustaining the court's decision, *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).  We do not reweigh conflicting evidence or redetermine the credibility of witnesses. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151–52, ¶¶ 18–19 (2018).

**¶9**      A parent's rights over her child may be severed under the length-of-incarceration ground "if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years."  A.R.S. § 8-533(B)(4).  The statute provides no definition for "normal home" or "period of years," but our supreme court has described "the inquiry [as] individualized and fact specific," *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 9 (2021) (citation omitted), and has articulated six non-exclusive factors:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that

incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J.*, 196 Ariz. at 251–52, ¶ 29. "A lack of evidence on one or several of [these] factors may or may not require reversal or remand on a severance order." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007).

**¶10** Mother contends the record does not support termination under these non-exclusive factors. We examine each factor in turn.

## I. Pre-incarceration relationship.

**¶11** The first factor is "the length and strength of any parent-child relationship existing when incarceration begins." *Michael J.*, 196 Ariz. at 251–52, ¶ 29. The juvenile court found that "Mother made no effort to establish any sort of parental bond or relationship with [Child] prior to her incarceration," and that "there was no existing relationship or bond between Mother and [Child] that [DCS] could have maintained through reunification services while Mother was in custody."

**¶12** The record has reasonable evidence to support these findings. Mother was incarcerated just three months after Child was born. Even Mother concedes she did not establish a strong relationship with Child before her incarceration.

## II. Relationship during incarceration.

**¶13** The second factor is "the degree to which the parent-child relationship can be continued and nurtured during the incarceration." *Michael J.*, 196 Ariz. at 252, ¶ 29.

**¶14** The record has reasonable evidence to support a finding that Mother did not develop a relationship with Child while incarcerated. Although she completed parenting classes and substance abuse programs during this time, Mother has failed to regularly contact Child, despite Child's paternal grandmother's offer to facilitate visits and communications.

## III.  Age of children and deprivation of normal home.

¶15        The third factor is "the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home." *Michael J.*, 196 Ariz. at 252, ¶ 29.  The juvenile court found that "Mother's incarceration will deprive [Child] of a normal home."

¶16        The record has reasonable evidence to support that finding. Child was almost three months-old when Mother was jailed, and Mother has been physically absent Child's entire life.  Child will be almost three years-old when Mother is released and has never lived with Mother during that significant developmental period.  A DCS witness offered testimony about the importance of permanency and normalcy in those early years. The court found that "[Child] is bonded to his paternal grandmother as a parental figure."  Child has been living with his paternal grandmother since he was just a few weeks old, and "she is the only caregiver he has ever known."

¶17        We are unpersuaded by Mother's focus on the number of years she will have with the Child after her anticipated release.  Our decision must account for the historical facts and Mother's extended absence to date, which has deprived Child of a normal home for much of his life. *See Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 215, ¶ 14 (App. 2016).  Adding to that, Mother will still require significant services when released from prison.

## IV.  Length of absence.

¶18        The fourth factor is "the length of the sentence." *Michael J.*, 196 Ariz. at 252, ¶ 29.  Mother's official release date is October 2025, although she is scheduled for April 2024.  The juvenile court found that Mother would be incarcerated for three years and that "[r]eunification would not be possible immediately upon her release."

¶19        The record has reasonable evidence to support that finding because Mother will need to demonstrate sobriety outside of incarceration. She will also need substantial services and counseling before any reunification, including parenting classes and continuous testing of substance abuse issues with "consistent clean results."  Beyond that, she will need time to adjust before any possible reunion with Child, will need to "demonstrate the newly acquired skills and caregiver capacities," and will need to "maintain stable housing and employment."  Child will be almost three years-old and had no physical contact with Mother for nearly

his entire life, including "during the most crucial time for his bonding and attachment."

¶20 Mother counters that the juvenile court did not consider she could be released a little over one year after the termination hearing. We are not persuaded. The "relevant period is the entire period of incarceration, not solely the time after entry of the termination order," *Jeffrey P.*, 239 Ariz. at 214, ¶ 9, and the court may consider a parent's anticipated release date, *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 550, ¶ 15 (App. 2010).

## V. Available parent.

¶21 The fifth factor is "the availability of another parent to provide a normal home life." *Michael J.*, 196 Ariz. at 252, ¶ 29. The court found "there is no other parent or permanent guardian available to provide a normal home life," and the record has reasonable evidence to support that finding. The juvenile court terminated Father's parental rights based on consent, and severance makes it possible for Child to be adopted. *See Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 10 (App. 2016) (severance "make[s] the Children eligible for adoption"). The court recognized that Child's paternal grandmother planned to adopt Child, representing "a caregiver who is willing and able to care for him and meet all of his needs."

## VI. Effect of deprivation.

¶22 The sixth factor is "the effect of the deprivation of a parental presence on the child at issue." *Michael J.*, 196 Ariz. at 252, ¶ 29. The juvenile court found that Mother's incarceration, "coupled with Mother's inaction during the first few months of [Child's] life, has deprived [Child] of any real parent-child relationship." The record has reasonable evidence to support this finding.

¶23 In sum, the juvenile court did not abuse its discretion when it terminated Mother's parental rights based on the length-of-incarceration ground.

**CONCLUSION**

¶24        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA