NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO X.M.

No. 1 CA-JV 25-0028

FILED 11-06-2025

Appeal from the Superior Court in Maricopa County
No. JD29600
The Honorable Glenn A. Allen, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Mesa
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Yu-Shan "Sunny" Kuo
*Counsel for Appellee Department of Child Safety*

Law Office of Ed Johnson, Peoria
By Edward D. Johnson
*Counsel for Appellee X.M.*

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Vice Chief Judge David D. Weinzweig and Judge Cynthia J. Bailey joined.

**P E R K I N S**, Judge:

¶1          Charlie B. ("Father") appeals the juvenile court's order terminating his parental rights to Xander (a pseudonym). Mother is not a party to this appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          Father has been incarcerated in Yuma since August 2023 for disorderly conduct and misconduct involving weapons, his ninth and tenth felony convictions. His anticipated release date is October 2026, followed by a term of community supervision. Father is 45 years old and has spent a total of 22 years in custody since turning 18. His longest period out of custody was three years.

¶3          Father and Mother are not married and have one child in common, Xander, who was born in February 2024. Xander's umbilical cord tested positive for numerous substances, including methamphetamines, methadone, amphetamines, and fentanyl. Shortly after Xander's birth, Mother disappeared and the Department of Child Safety ("DCS") took Xander into custody. DCS initiated dependency proceedings and filed a paternity suit against Father. Father has always maintained paternity of Xander. In July 2024, the juvenile court found Xander dependent and confirmed Father's paternity.

¶4          DCS placed Xander with his maternal step-grandmother ("Grandmother") in Phoenix. Grandmother already adopted Mother's other child, Xander's half-brother.

¶5          Due to Xander's age and the distance between Phoenix and Yuma, DCS and Father agreed to weekly video visitation in lieu of in-person visitation. With some exceptions, video visits occurred weekly for thirty minutes beginning in July 2024. Father sent presents and clothes to Xander through Grandmother and Father's sister.

¶6          Grandmother refused permanent guardianship because she would rather adopt Xander, and Xander's case plan was changed to termination and adoption. In September 2024, Xander's attorney moved to terminate Father's rights on the length-of-sentence ground and Mother's rights on the abandonment ground.

¶7          Mother's rights were terminated in January 2025. After a contested termination hearing, the juvenile court terminated Father's rights

in February 2025. Father appealed the termination order, and we have jurisdiction. *See* A.R.S. §§ 8-235, 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶8**         When reviewing a termination order, we will accept the court's factual findings when they are supported by reasonable evidence and inferences. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023). "Because the juvenile court is in the best position to weigh evidence and assess witness credibility," we view the evidence in the light most favorable to sustaining the juvenile court's decision. *Id*. at 478–79, ¶¶ 30, 32 (cleaned up).

**¶9**         To terminate the parent-child relationship, the court must find (1) parental unfitness based on at least one statutory ground under Arizona Revised Statutes Section 8-533(B) by clear and convincing evidence, and (2) termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018).

## I.     Statutory Ground

**¶10**         We review the juvenile court's legal conclusions regarding the statutory ground for clear error. *Brionna J.*, 255 Ariz. at 478–79, ¶ 31.

**¶11**         A parent's rights over his child may be terminated under the length-of-sentence ground "if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4).

**¶12**         The statute provides no definition for "normal home" or "period of years," but our supreme court has described "the inquiry [as] individualized and fact specific," *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 9 (2021) (cleaned up), and has articulated six non-exclusive factors:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the

sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251–52, ¶ 29 (2000). "A lack of evidence on one or several of [these] factors may or may not require reversal or remand on a severance order." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007).

¶13            The juvenile court made findings specific to each factor, but Father only challenges the juvenile court's finding on the second factor. The juvenile court found that no meaningful relationship could be created or maintained under these circumstances because there was no prior relationship, Xander was too young to communicate effectively, and Father will have had "virtually zero" time to bond with the child during these formative years. Father argues he can nurture a relationship through the current video visitation schedule because Xander's cognitive development is improving, and future in-person visitation should be allowed because Xander is now over one year old.

¶14            We note that the circumstances the juvenile court relied on here will be present for every parent whose child is born during his incarceration. And the record shows Father has nurtured his bond with Xander to the extent possible. He has attended weekly video visits, sent over gifts, and the DCS caseworker testified that Father is bonded with Xander. Even if Father is correct that this factor weighs against termination, reversal is not warranted in light of the remaining factors.

¶15            Father has not challenged the other *Michael J.* factors. Generally, a party waives issues not raised on appeal. *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577–78, ¶ 5 (App. 2017). But waiver is discretionary, not "an unalterable rule." *Reid v. Reid*, 222 Ariz. 204, 208, ¶ 16 (App. 2009). We consider each remaining factor in turn.

¶16            Regarding the extent of a pre-existing relationship, Xander was born six months into Father's term of incarceration. There was thus no relationship before Father's incarceration. The first factor favors termination.

¶17            The juvenile court found, and the record supports, that "Father has missed, and will continue to miss, a good portion of the child's formative years." Father has been physically absent for Xander's entire life. By the time Father is released, Xander will be almost three years old and

will never have lived with Father during that significant developmental period. Father cannot provide Xander with a normal home through weekly virtual visits. Even after his release, Father will be under community supervision and require significant services, further impairing his ability to provide a normal home. The third factor favors termination.

**¶18** The fourth factor requires courts to consider the "total length of time the parent is absent from the family," not just the period of incarceration. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 281, ¶ 8 (App. 2002). This includes conditions of release and time "needed to complete parenting classes, counseling, and other services." *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 214, ¶ 10 (App. 2016). Once released, Father must complete community supervision, obtain stable housing, and find employment before reunifying with Xander. While Father believed he could achieve these goals in a matter of months, the court noted this estimate was "admirable, [but] not realistic." That finding is supported by the record considering Father's long criminal history. The fourth factor favors termination.

**¶19** As for the availability of another parent, Mother's rights were terminated, Grandmother will not serve as Xander's permanent guardian, and Father has identified no one willing to fill those shoes. The fifth factor favors termination.

**¶20** Finally, Xander has been without a parental presence for his entire life and will continue to be without one until some point in time after Father's release from incarceration. The sixth factor favors termination.

**¶21** "In some instances, a 20-year sentence might not provide sufficient basis for severing an incarcerated parent's rights, while in another case a 3-year sentence could provide the needed basis." *Michael J.*, 196 Ariz. at 251, ¶ 29. We recognize Father's efforts to be involved in his son's life. But reasonable evidence supports the court's findings on the other *Michael J.* factors, all of which support termination. The court did not err in concluding statutory grounds exist to support termination based on Father's incarceration.

## II.    Best Interests

**¶22** We view "the record in the light most favorable to upholding the court's best-interests finding," *Alma S.*, 245 Ariz. at 152, ¶ 21, and will "accept the juvenile court's findings of fact if reasonable evidence and inferences support them." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016). "Termination is in the child's best interests if either: (1) the child will

benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S.*, 245 Ariz. at 150, ¶ 13 (cleaned up).

**¶23**        Father contends the court abused its discretion by finding termination was in Xander's best interests. He argues that because the court erred on the second *Michael J.* factor, it could not have properly evaluated Xander's best interests.

**¶24**        The court found termination would benefit Xander because it would allow him to be adopted by Grandmother. A child's prospective adoption can support a court's best-interests finding. *Demetrius L.*, 239 Ariz. at 4, ¶ 16. The adoption would provide Xander with a safe and stable home where he could permanently live with his half-brother. The record thus supports the juvenile court's finding that termination was in Xander's best interests.

**CONCLUSION**

**¶25**        We affirm.

