NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO T.C.

No. 1 CA-JV 25-0115

FILED 02-10-2026

---

Appeal from the Superior Court in Maricopa County
No. JS21415
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Ed Johnson, PLLC, Peoria
By Edward D. Johnson
*Advisory Counsel for Appellant*

Law Office of Timothy V. Nelson, Queen Creek
By Timothy V. Nelson
*Counsel for Appellee T.C.*

Raymya C., Tempe
*Appellee*

_____

**MEMORANDUM DECISION**

Vice Chief Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Veronika Fabian joined.

_____

**W E I N Z W E I G**, Vice Chief Judge:

¶1            Trent B. ("Father") appeals the superior court's order terminating his parental rights to his child, T.C. ("Child").  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2            Father and Raymya C. ("Mother") are the biological parents of Child, born in October 2015.  For Child's first 19 months, Mother was the primary caregiver, though Mother and Father lived together and shared parenting responsibilities.  They separated in May 2017.  Three weeks later, Father was arrested for selling marijuana to an undercover police officer.  He was later convicted of selling illegal drugs and sentenced to 11.25 years, plus five years for violating his probation, to run consecutively.

¶3            Mother obtained an order of protection against Father for herself and Child stemming from a domestic violence incident before Father's arrest.  Father had minimal contact with Child for the next five years.

¶4            In the interim, Mother met and married Stepfather, who took Child in and treated him as his own son.  He took Child to school, enrolled him in sports and generally offered a positive role model.

¶5            Mother asked Father to voluntarily relinquish his parental rights so Stepfather could adopt Child in 2022.  Father refused and tried to reinsert himself into their lives.  He started writing letters to Child, arranging video chats and calling Mother to get ahold of Child.  After five years of little contact, Child was uncomfortable with Father's efforts.  That feeling was exacerbated by Father's inappropriate questions about Child's relationship with Stepfather.

¶6            Father sued for visitation.  Father opened a GoFundMe, which raised $6,000, almost all of which was used on the custody case rather

than to financially support Child. Mother had the GoFundMe page removed for using Child's image without permission.

**¶7** Mother petitioned the superior court to terminate Father's parental rights in October 2023. She alleged the statutory grounds of abandonment and length of felony incarceration. *See* A.R.S. § 8-533(B)(1), (4). After an evidentiary hearing, the court terminated Father's rights on both statutory grounds.

**¶8** On abandonment, the superior court reasoned that Father "has either failed to, or minimally performed, in the myriad of responsibilities associated with parenting" and only tried to establish a relationship once Mother sought Father's consent to adopt. The court also found Mother's acts did not rise to the level of interference required to establish a defense to abandonment.

**¶9** On length of felony incarceration, the superior court found "Father had no relationship with the Child after his arrest until the fifth year of his incarceration," and "[a]t this stage of the relationship . . . it will be very difficult to establish and then maintain the parent/child relationship." Although Father argued he sent "volumes" of letters and gifts to Child, the court found Father not credible. It further found "Father will have been incarcerated for all but two years" of Child's adolescence because his anticipated release date is July 2030 and "[t]here was no testimony to establish an earlier release date." Last, the court concluded Mother and Stepfather provided a stable home environment and Father's efforts to interject himself in their family detracted from that environment.

**¶10** The superior court found termination was in Child's best interests because Stepfather planned to adopt Child, which would provide permanency and stability. Father timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 8-235(A), 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶11** Even though Mother's failure to file an answering brief can constitute waiver, we exercise our discretion to reach the merits because a child's best interests are on the line. *See Nold v. Nold*, 232 Ariz. 270, 273, ¶ 10 (App. 2013) (the best interests of a child trump the discretionary doctrine of waiver).

**¶12** Father challenges the superior court's factual findings on appeal. To terminate parental rights, the court must find one statutory ground for termination under § 8-533(B) by clear and convincing evidence,

and that termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). We will affirm a severance order unless clearly erroneous and accept the superior court's findings of fact unless unsupported by reasonable evidence. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

## I.        Length of Felony Incarceration.

**¶13**        Section 8-533(B)(4) provides for termination of the parent-child relationship if "the parent is deprived of civil liberties due to the conviction of a felony if . . . the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." There is no "bright line" definition of when a sentence is long enough to deprive a child of a normal home for a period of years; the inquiry is individualized and fact specific. *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 9 (2021). The relevant factors include:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251–52, ¶ 29 (2000). A lack of evidence on one or more of the *Michael J.* factors may not require reversal. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007).

**¶14**        The superior court assessed each of the *Michael J.* factors and its findings were supported by reasonable evidence.

**¶15**        <u>Pre-incarceration relationship.</u> The first factor is "the length and strength of any parent-child relationship existing when incarceration begins." *Michael J.*, 196 Ariz. at 251–52, ¶ 29. The superior court found the relationship between Father and Child was minimal when incarceration began. The record shows that Mother was the primary caregiver during Child's first 19 months, though Father and Mother shared parenting responsibilities. Child did not remember Father when Father tried to reconnect. On balance, this factor favors neither party.

**¶16**        Relationship during incarceration.  The second factor is "the degree to which the parent-child relationship can be continued and nurtured during the incarceration."  *Id.* at 252, ¶ 29.  The superior court found it was doubtful that Father could reestablish and foster a relationship with Child.  After he was sent to prison, Father had minimal contact with Child for five years and their relationship was nonexistent.  Father's recent efforts to reestablish that relationship have been unfruitful because his calls have made Child uncomfortable.  This factor favors termination.

**¶17**        Age of children and deprivation of a normal home.  The third factor is "the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home."  *Id.*  The superior court found Child, now nine years old, would be deprived of a normal home because Father will be incarcerated for all but two years of Child's remaining childhood.  This factor favors termination.

**¶18**        Length of absence.  The fourth factor is the length of the sentence.  *Id.*  The record supports the finding that Father's earliest release date is July 18, 2030.  No evidence was introduced to show an earlier release date, and he has exhausted his judicial remedies.  *See Ariz. Dep't of Econ Sec. v. Rocky J.*, 234 Ariz. 437, 441, ¶ 16 (App. 2014) (finding that anticipated release date is a relevant factor).  What is more, his release date doesn't account for conditions of release that may affect his ability to interact with Child, like completing community supervision.  *See Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 214, ¶ 10 (App. 2016).  This factor favors termination.

**¶19**        Available parent.  The fifth factor is "the availability of another parent to provide a normal home life."  *Michael J.*, 196 Ariz. at 252, ¶ 29.  The superior court found that Mother could serve that role, and the record shows she provided a stable home environment for Child during Father's incarceration.  When another parent is available to provide a stable home, the court should also consider whether the incarcerated parent detracts from that stable environment.  *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 477, ¶ 27 (2022).  The court found Father's actions have undermined the stable home supplied by Mother.  Father used his calls to pressure Child and criticize Stepfather.  And Child did not benefit from Father's use of Child's image to fundraise for litigation.  This factor favors termination.

**¶20**        Effect of deprivation. The sixth factor is "the effect of the deprivation of a parental presence on the child at issue."  *Michael J.*, 196 Ariz. at 252, ¶ 29.  The superior court found Child had been deprived of the

normal love and care of a father in the home. But that harm had been mitigated by Stepfather's presence. This factor favors termination.

¶21 The superior court did not abuse its discretion because reasonable evidence supported its decision. Because we affirm on length of felony incarceration, we need not reach the alternative ground for termination. *See Jesus M.*, 203 Ariz. at 280, ¶ 3 (court may affirm if reasonable evidence supports at least one termination ground).

## II. Best Interests.

¶22 Termination is in a child's best interests if that child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004). A child's prospective adoption is evidence of a benefit to support a best-interests finding. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–5, ¶¶ 12, 17 (2016).

¶23 The superior court found termination was in Child's best interests because Stepfather wants to adopt him. Both Stepfather and Child want to proceed with the adoption, and it would result in permanency and stability for Child. We discern no abuse of discretion.

## CONCLUSION

¶24 We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR